1
2
3
4
5

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON

Jesus RAMIREZ and Barbara LOPEZ, )
Husband and Wife, )
) C13-1236Z
)
   Plaintiffs, )
) ORDER
              v. )
)
)
Linda DOUGHERTY, Field Office )
Director, USCIS Seattle Field Office; )
Alejandro MAYORKAS, Director, USCIS; )
Janet NAPOLITANO, DHS Secretary, Eric )
HOLDER, United States Attorney General )
)
   Defendants.

THIS MATTER comes before the Court on Defendants' motion for summary judgment, docket no. 18, and Plaintiffs' cross-motion for summary judgment, docket no. 19. Having considered all materials filed in support of and opposition to the motions,[1] the Court enters the following Order.

---

[1] The Court GRANTS Defendants' Motion to file an Untimely Surreply, docket no. 30, and has reviewed the surreply. Defendants' Motion to Strike Attachment 1 to Plaintiffs' Reply, docket no. 30-4, is DENIED. The Court has considered all materials submitted in support of and opposition to both parties' motions for summary judgment. In making its decision, the Court has not relied on attachment 1 to Plaintiffs' reply.

ORDER - 1

**Background**

The material facts of this case are not in dispute. Plaintiff Jesus Ramirez entered the United States from El Salvador on May 30, 1999, without being inspected and admitted or paroled by an immigration officer. In 2001, the United States Attorney General designated El Salvador under the Temporary Protected Status ("TPS") program after the country experienced an earthquake. Ramirez disclosed his unlawful entry into the U.S., applied for, and received TPS under 8 U.S.C. § 1254a(1). Since that time, Ramirez has re-registered for TPS as needed.

On July 21, 2012, Ramirez married Plaintiff Barbara Lopez, an American citizen. Lopez filed a Form I-130 "Petition for Alien Relative" on Ramirez's behalf, and Ramirez filed a Form I-485 application to adjust his status to that of a lawful permanent resident, under 8 U.S.C. § 1255(a). U.S. Citizenship and Immigration Services ("USCIS") denied Ramirez's application, explaining that Ramirez was not eligible to adjust his status because he entered the United States without inspection, and thus was not "inspected and admitted or paroled" into the United States as required by 8 U.S.C. § 1255(a).

Ramirez and Lopez now seek judicial review of USCIS's decision in this action under the Administrative Procedure Act, 5 U.S.C. § 701.

**Discussion**

**A. Summary Judgment Standard**

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law determines which facts are material; only disputes over facts that might

ORDER - 2

affect the outcome of the suit under the governing law properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### B.  Standards for Judicial Review under the Administrative Procedure Act

The Administrative Procedure Act (APA) governs judicial review of agency actions.  Alaska Survival v. Surface Transp. Bd., 705 F.3d 1073, 1079 (9th Cir. 2013).  A court may set aside an agency decision if the decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  Id. (quoting 5 U.S.C. § 706(2)(A)).

Review of an agency's interpretation of a statute is a two-step analysis.  See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).  If the intent of Congress is clear, the Court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  Id. at 842 – 43.  If a statute is silent or ambiguous, the Court must defer to the agency so long as the agency's answer is based on a permissible construction of the statute.  Id.  "The weight of deference, if so given, depends on "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  Flores v. U.S. Citizenship and Immigration Serv., 718 F.3d 548, 551 (6th Cir. 2013) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 139 – 40 (1944)).

An agency's interpretation of a statute is a question of law reviewed de novo.  Snoqualmie Indian Tribe v. FERC, 545 F.3d 1207, 1212 – 13 (9th Cir. 2008).

C.  **Statutory Interpretation**

Pursuant to 8 U.S.C. § 1255(a), an alien who was inspected and admitted or paroled into the United States may adjust his status to that of a lawful permanent resident if certain conditions are met.  The only issue for the Court is whether Mr. Ramirez was "inspected and admitted," and therefore eligible to adjust his status.  The determination hinges on the interplay between the adjustment of status statute, § 1255(a), and a subsection of the TPS statute, § 1254a(f)(4).

The Court holds that § 1254a(f)(4)[2] provides a pathway for a TPS beneficiary to obtain lawful permanent resident (LPR) status pursuant to 8 U.S.C. § 1255.  See Flores v. U.S. Citizenship and Immigration Serv., 718 F.3d 548 (6th Cir. 2013).  The facts in Flores are directly analogous to the facts in the present case.  In that case, the plaintiff argued, and the court agreed, that while one must be "admitted" to gain LPR status, TPS beneficiaries are afforded with an exception under the TPS statute that operates as an inadmissibility waiver.  Id. at 552.

The Court adopts the Sixth Circuit holding because the plain meaning of § 1254a(f)(4) indicates that it applies to the entirety of § 1255.  Flores, 718 F.3d at 553.  Congress has clearly demonstrated an ability to reference specific statutory subsections in various parts of the Immigration and Nationality Act (INA)[3]; it seems unlikely that Congress would do so in so many other instances and fail to do so in § 1254a.  The

---

[2] The statute reads: "for the purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant."  8 U.S.C. § 1254a(f)(4).

[3] See e.g., 8 U.S.C. § 1227(a)(1)(H) (specifically providing a waiver of admissibility for 8 U.S.C. § 1182(a)(6)(C)(i)).

ORDER - 4

Government provides little support for its narrow interpretation of the statute.  It argues that § 1254a applies only to § 1255(c)(2), but it provides no explanation for why Congress would have written the § 1254a(f)(4) exception the way it did if meant to specifically reference § 1255(c)(2).

The Government urges this Court to follow Serrano and conclude that the plain language of sections 1254a(f)(4) and 1255(a) foreclose Ramirez's eligibility to adjust his status.  See Serrano v. U.S. Attorney Gen., 655 F.3d 1260 (11th Cir. 2011).  Serrano is easily distinguished because the plaintiff in that case failed to disclose that he originally entered the country unlawfully.  See Flores, 718 F.3d at 555 n.4.  Ramirez, however, disclosed his entry without inspection when he applied for TPS status.  See AR at 23.

**D.  Inspected and Admitted**

Neither party provides legal support for the definition of "inspected."[4]  However, both parties extensively dispute the definition of "admitted."  Defendants argue that the Board of Immigration Appeals (BIA) recognizes two groups of aliens who have been admitted to the United States: "(1) those who entered the United States with the permission of an immigration officer after being inspected at a port of entry; and (2) those who entered the United States without permission or were paroled, but who subsequently became lawful permanent residents."  Matter of Alyazji, 25 I. & N. Dec. 397, 399 (BIA 2011).  Defendants argue that Ramirez is not included in either group

---

[4] "Neither the INA [n]or the case law appear to specifically define the terms 'inspection' or 'inspected.'"  Pl.'s Motion for Summary Judgment, docket no. 19 at 8.  Plaintiffs do argue that because TPS applicants undergo a rigorous inspection process by an immigration officer, TPS applicants are "inspected" within the plain meaning of the term.

ORDER - 5

because he entered the U.S. without inspection, and he has not successfully adjusted his status.

However, the Ninth Circuit's holding that enrollment in the Family Unity Program (FUP) constituted an "admission" within the meaning of the INA can be applied to the present case. See Garcia-Quintero v. Gonzalez, 455 F.3d 1006 (9th Cir. 2006). In that case, the court reasoned that although the plaintiff's "enrollment into the FUP did not literally comport with the INA's definition of 'admitted,' both this court and the BIA, in precedential decisions, have not limited the scope of 'admitted' to this strict definition." Id. at 1015. Plaintiffs correctly argue that this reasoning applies to the current case because a TPS beneficiary similarly undergoes a process that specifically requires inadmissibility to be waived and is expressly accorded lawful status during the time that TPS status is in effect. See 8 U.S.C. § 1254a(c)(2)(A); 8 U.S.C. § 1254a(f)(4). While the Government properly notes that FUP is a different program, and the Garcia-Quintero case involved a different statute, Plaintiffs do not assert otherwise. Plaintiffs argue, instead, that the Garcia-Quintero court's discussion of the term "admitted" as defined by 8 U.S.C. § 1101(a)(13) speaks directly to one of the main issues in the present case. Garcia-Quintero, 455 F.3d at 1015. Further, Plaintiffs correctly argue that the similarities in the two programs (FUP and TPS) outweigh these differences.[5] Both programs accord an

---

[5] Plaintiffs also rely on Garcia v. Holder, in which the Ninth Circuit determined that the grant of parole under the Special Immigrant Juvenile Status (SIJS) program (8 U.S.C. § 1255(h)) could be considered as being admitted in any status. 659 F.3d 1261 (9th Cir. 2011). The Ninth Circuit compared the SIJS program to FUP and noted the similarities between the two programs: both applied to a narrow class of noncitizens, both had stringent eligibility requirements, beneficiaries under both programs received special benefits such as permission to remain in the U.S, work authorization, and exemption from certain inadmissibility grounds. Id. At 1269 – 72. The TPS program shares all of these characteristics as well.

ORDER - 6

actual immigration status to the individual, provide protection from removal during the time such status is accorded, allow for travel outside the U.S., and contemplate adjustment of status for each program's respective beneficiaries.  See 8 C.F.R. § 236.15; 8 U.S.C. §§ 1254a(a)(1)(A), 1254a(c)(4), 1254a(f)(4); Garcia-Quintero, 455 F.3d at 1009.

The Defendants also argue that the BIA, in its opinion in Matter of Rosas-Ramirez, rejected the Garcia-Quintero decision.  22 I. & N. Dec. 616 (BIA 1999).  However, this argument is meritless because (1) Garcia-Quintero remains good law in the Ninth Circuit, and (2) the BIA in Matter of Rosas-Ramirez was not within Ninth Circuit jurisdiction and was therefore not bound by Garcia-Quintero.  Furthermore, the BIA did not assert Brand X[6] to state that it would no longer follow Garcia-Quintero in the Ninth Circuit.

Defendants argue that TPS merely offers a temporary reprieve from removability, and that TPS beneficiaries do not meet § 1255(a)'s "admission" requirement solely by virtue of their TPS.  However, this misinterprets Plaintiffs' argument as the Plaintiffs do not dispute the goal of TPS.  Just as the Sixth Circuit explained, "The issue is not whether all TPS beneficiaries automatically qualify for LPR adjustment under § 1255.  [Plaintiff] argues that because he is a TPS beneficiary, who has been deemed to have good moral character and has a visa available to him on an independent basis – here through the immediate relative petition filed by his wife – that he therefore qualifies for consideration of adjustment of status under § 1255."  Flores, 718 F.3d at 554 (2013).  Section

---

[6] National Cable & Telecomm. Ass'n v. Brand X Internet Serv., 545 U.S. 967 (2005).

ORDER - 7

1254a(f)(4) addresses this exact situation because Ramirez is in lawful nonimmigrant status and meets the three requirements of § 1255.  See id.

### E.  Agency Deference

The Court need not defer to the agency's interpretation of § 1254a(f)(4) because the Court must "give effect to the unambiguously expressed intent of Congress."  Garcia-Quintero, 455 F.3d at 1012 (quoting Chevron, 467 U.S. at 843).  However, even if the Court found the statute to be ambiguous, it would not apply Chevron deference because the Government is relying on non-precedential agency decisions.  See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).  Rather, the Court would apply Skidmore deference.  See id.  In addressing the question of deference, the Flores court found that, although the consistency factor weighed heavily in favor of the USCIS, the "validity of reasoning" factor weighed heavily *against* USCIS.  Flores, 718 F.3d at 555 (2013).  The court in that case found that the "validity" factor "outweighs the consistency factor.  Being consistently wrong does not afford the agency more deference than having valid reasoning."  Id.

Similarly, in the present case, even though the Government relies on *consistent* non-precedential agency decisions, consistency does not outweigh validity.  Flores, 718 F.3d at 555 (2013).  Furthermore, none of the Government's relied-upon agency decisions adequately address the issue in the present case because they provide little to no explanation of what constitutes an inspection and/or admission.  See Genco Op. No. 93-94, 1993 WL 1504041 (INS Dec. 28, 1993); Genco Op. No. 91-27, 1991 WL 1185138

(INS Mar. 4, 1991). Therefore, the validity factor weighs heavily in favor of the Plaintiffs in the present case.

### F. Policy

Policy considerations strongly support the Court's interpretation. Mr. Ramirez has been in the United States for about fifteen years; he has established roots here. Just like the plaintiff in <u>Flores</u>, Mr. Ramirez has waited his turn for an independent, legal, and legitimate pathway to citizenship, through the immediate relative visa application. "The Government is essentially telling him that he is protected and can stay here, but that he will never be allowed to become an LPR, even for an independent basis." <u>Flores</u>, 718 F.3d at 555 (2013). The Government therefore wants this Court to require Mr. Rodriguez to leave the United States, be readmitted, and then go through the immigration process all over again. "This is simply a waste of energy, time, government resources, and will have negative effects on his family." <u>Flores</u>, 718 F.3d at 555 (2013).

### **Conclusion**

There are no material facts in dispute and summary judgment is proper as a matter of law. Mr. Ramirez has lawful nonimmigrant status in the United States and, through his participation in the TPS program, he has been inspected and admitted for the purposes of 8 U.S.C. § 1255. Mr. Ramirez meets the requirements of § 1255(a) and Defendants' decision to deny his application to adjust his status to that of a lawful permanent resident was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. For these reasons, the Court GRANTS Plaintiffs' Cross- Motion for Summary Judgment,

docket no. 19, and DENIES Defendants' Motion for Summary Judgment, docket no. 18. The Court REMANDS the case to the USCIS for review, consistent with this Order.

    IT IS SO ORDERED.

    DATED this 30th day of May, 2014.

                                        /s/ Thomas S. Zilly
                                        THOMAS S. ZILLY
                                        United States District Judge